[No. 49298-1. En Banc. January 3, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM FLOYD KINCAID, *Appellant.*

---

[17]Relocation assistance, real property acquisition policy law, RCW 8.26. *See* RCW 8.26.010(1).

*William Kincaid,* pro se, and *Ted Roy* (of *Roy & Pell*), for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Robert N. Hackett, Jr., Deputy,* for respondent.

ANDERSEN, J.—

### FACTS OF CASE

Defendant appeals his conviction at a jury trial of non-capital aggravated first degree murder and murder in the

second degree. He was sentenced to life imprisonment without possibility of parole on the aggravated first degree murder conviction with his sentence on the murder in the second degree conviction to run concurrently. We granted direct review.

There was little issue at trial about the manner of the killings, the primary issue being whether the defendant had the mental capacity to premeditate the killings.

The murders were committed in Yakima County on June 14, 1982. The defendant and his wife, Charla Lynn Kincaid, were separated. The wife and their young son were residing with the wife's sister, Debra Denise Kruse. On the day of the killings, the defendant visited his wife at her sister's place and they discussed reconciliation. The wife told him she had decided not to come back to him and that she planned to keep their child with her. The wife then went upstairs with her sister. Shortly afterwards, the defendant followed them upstairs where he overheard his wife and her sister discussing him and the marriage.

The defendant then went back downstairs and out to his truck. There he got his 12–gauge magnum shotgun and loaded it with five shells. He returned to the house with the gun and proceeded upstairs. The sister saw the defendant and screamed for her boyfriend, who was downstairs, and the wife locked herself in the small upstairs bathroom. In response to the scream, the boyfriend started up the stairs but retreated when the defendant pointed the shotgun at him and threatened to shoot him if he didn't leave. The boyfriend went outside, gathered up the three children of the wife and her sister and put them in his car.

The defendant then fired upward at the sister, shooting her in the neck and jaw and killing her. Then he went to the bathroom and kicked the door in. As the wife cowered between the toilet and the wall, the defendant shot her in the back of the head causing her instantaneous death. The defendant tried to shoot himself but apparently failed due to the length of the shotgun barrel. He went outside again, loaded more shells into the gun and returned upstairs to

the scene of the two killings. This time the defendant managed to shoot away part of his jaw and mouth.

Two principal issues are presented for review.

## ISSUES

ISSUE ONE. In a prosecution for aggravated first degree murder, must any alleged aggravating circumstance be included as an element of the crime in the "to convict" instruction for that offense?

ISSUE TWO. In order for a defendant to be convicted of aggravated first degree murder under statutory aggravating circumstance number 8, namely, that there is "more than one victim and the murders were part of a common scheme or plan or the result of a single act" (RCW 10.95.020(8)), must the "murders" referred to in that subsection of the statute be premeditated first degree murders?

## DECISION

ISSUE ONE.

CONCLUSION. The statutory aggravating circumstances which, when present, raise premeditated first degree murder to aggravated first degree murder punishable by mandatory life imprisonment or death, are "aggravation of penalty" factors which enhance the penalty for the offense, and are not elements of a crime as such. Accordingly, it is unnecessary that the aggravating circumstances alleged to exist be set forth as elements of the offense in the "to convict" instruction on the underlying murder charged; provided, as here, the jury is otherwise properly instructed as to how the existence of any such aggravating circumstance is to be determined.

In the interest of readability, the citations in this opinion have been placed in the margin wherever feasible.

By way of background, it was in 1972 that the United States Supreme Court in *Furman v. Georgia,* 408 U.S. 238, 33 L. Ed. 2d 346, 92 S. Ct. 2726 (1972) nullified the capital punishment laws of 39 states (including the State of Washington) and the District of Columbia. In the following decade or more, a majority of the states have struggled to

bring their capital punishment statutes into conformity with changing and sometimes uncertain guidelines laid down by the United States Supreme Court. A comprehensive chronological review of those efforts is contained in this court's opinion in *State v. Bartholomew,* 98 Wn.2d 173, 654 P.2d 1170 (1982), *State's cert. granted,* 463 U.S. 1203, 77 L. Ed. 2d 1383, 103 S. Ct. 3530, *defendant's cert. denied,* 463 U.S. 1212, 77 L. Ed. 2d 1395, 103 S. Ct. 3548 (1983) (*Bartholomew I*).

A further brief look at the history of aggravated first degree murder in this state, from the standpoint of the overall statutory framework in which it is contained, is helpful in putting the issues of this case into perspective.

RCW Title 9A is the Washington Criminal Code.[1] It defines four kinds of homicide, one of which is murder.[2] It then goes on in two separate statutes to define two kinds of murder, namely, murder in the first degree[3] and murder in the second degree.[4] Each of these two kinds of murder can be committed in any of the various ways enumerated in the statutes defining these offenses.

There was a time in our recent history when a third kind of murder was defined in RCW Title 9A, the Washington Criminal Code. That came about in 1975 through Initiative 316, when the people took matters into their own hands and directly enacted, as they were empowered to do, a law establishing the crime of aggravated murder in the first degree. By the terms of that initiative, anyone who committed murder in the first degree, in any manner, when the murder was accompanied by any of the seven aggravating factors specified in the initiative, was guilty of the crime of aggravated murder in the first degree for which the death penalty would then be mandatory.[5]

---

[1]RCW 9A.04.010(1).  [3]RCW 9A.32.030.

[2]RCW 9A.32.010.  [4]RCW 9A.32.050.

[5]Initiative 316, Official Voters Pamphlet 6 (1975); Laws of 1975, 2d Ex. Sess., ch. 9, p. 17; former RCW 9A.32.045–.046.

This court subsequently held that it is essential that a capital sentencing decision allow for consideration of whatever mitigating circumstances may be relevant to the offender or the offense, and that since Initiative 316 made no allowance for that, the mandatory death penalty provision of the initiative was unconstitutional.[6] Subsequent legislative efforts to cure drafting and constitutional problems were likewise struck down by this court.[7] A comprehensive new enactment by the 1981 Legislature followed, and it is that enactment which is now the law.[8]

The present law relating to aggravated first degree murder and the penalty therefor is RCW 10.95. Of significance to this case is that the Legislature did not place this new statute in RCW Title 9A, the Washington Criminal Code, but entitled the bill "AN ACT Relating to capital punishment" and enacted the new statute as a part of RCW Title 10, the criminal procedure title of the revised code.[9]

Basically, the present law is a refined version of Initiative 316 and earlier legislative changes thereto.[10] It provides for enhanced penalties when: (1) a premeditated first degree murder is committed and (2) one or more statutory aggravating circumstances are also found to exist. The part of the statute so providing, insofar as pertinent to this case, is as follows:

> A person is guilty of aggravated first degree murder if he or she commits first degree murder as defined by RCW 9A.32.030(1)(a), as now or hereafter amended, and one or more of the following aggravating circumstances

---

[6]*State v. Green,* 91 Wn.2d 431, 444–47, 588 P.2d 1370 (1979), *rev'd on rehearing on other grounds,* 94 Wn.2d 216, 616 P.2d 628 (1980).

[7]*State v. Martin,* 94 Wn.2d 1, 614 P.2d 164 (1980); *State v. Frampton,* 95 Wn.2d 469, 627 P.2d 922 (1981).

[8]Laws of 1981, ch. 138, p. 535; RCW 10.95.

[9]Substitute House Bill 76, Laws of 1981, ch. 138, p. 535.

[10]*See generally* Erickson, *Refinement of Washington's Death Penalty Act,* 17 Gonz. L. Rev. 715 (1982).

exist:

. . .

(8) There was more than one victim and the murders were part of a common scheme or plan or the result of a single act of the person;

RCW 10.95.020(8). The statutory reference in the quoted portion of this statute, namely, "RCW 9A.32.030(1)(a)", is to the premeditated murder statute.

The statute provides for a bifurcated procedure. At the first, the guilt phase of the trial, it is determined whether the defendant is guilty of premeditated murder in the first degree, and, if so, it is then determined whether one or more of the statutory aggravating circumstances exist. If the death penalty has not been asked (as in this case), the defendant who is found guilty of premeditated murder in the first degree where one or more aggravating circumstances exist, is sentenced to life imprisonment without possibility of parole;[11] but, if the death penalty is sought, the trial then shifts into a separate capital sentencing phase where it is determined whether there are sufficient mitigating circumstances to merit leniency and, if not, the death penalty is imposed.[12]

Washington statutes thus provide three levels of punishment for persons convicted of premeditated first degree murder. Persons convicted of premeditated first degree murder alone are sentenced to life imprisonment with possibility of parole.[13] Persons convicted of premeditated first degree murder, where one or more of the statutory aggravating circumstances are found, and the death penalty is not sought or obtained, are sentenced to mandatory life imprisonment. And persons convicted of premeditated first degree murder, where one or more of the statutory aggra-

---

[11]RCW 10.95.030(1); *State v. Dictado*, 102 Wn.2d 277, 296–98, 687 P.2d 172 (1984).

[12]RCW 10.95.030(2)–.080.

[13]RCW 9A.32.040.

vating circumstances are found, and where the death penalty is sought, are sentenced to death if it is determined that there are not sufficient mitigating circumstances to merit leniency. It is the existence of one or more of the statutory aggravating circumstances which satisfies the constitutional imperative of narrowing the class of persons eligible for the death penalty and which justifies the imposition of the more severe sentence.[14]

In this case, the trial court instructed the jury in accordance with the statutory scheme. As to each of the two murders charged, the jury was given the Washington pattern premeditated murder in the first degree "to convict" instruction setting out the elements of the crime, as well as what was basically the pattern instruction defining that crime.[15] As to each count, the jury was likewise instructed on the included offenses of murder in the second degree and manslaughter.

The jury was further instructed that, if it found the defendant guilty of premeditated first degree murder on one count, and guilty of either first or second degree murder on the other count, it would then be necessary to return a special verdict on the alleged aggravating circumstance. In that regard, the jury was also instructed that the State was required to prove the aggravating circumstance beyond a reasonable doubt and that the jurors must unanimously agree on the special verdict.

The jury returned verdicts of guilty of premeditated murder in the first degree in the death of the defendant's wife and guilty of murder in the second degree in the death of her sister. It also returned a special verdict finding that a statutory aggravating circumstance existed.

The defendant observes that the information which charged him with the murders denominated the crimes

---

[14]*Zant v. Stephens*, 462 U.S. 862, 877, 77 L. Ed. 2d 235, 103 S. Ct. 2733 (1983); *State v. Bartholomew*, 101 Wn.2d 631, 635–36, 683 P.2d 1079 (1984) (*Bartholomew* II); *State v. Campbell*, 103 Wn.2d 1, 691 P.2d 929 (1984).

[15]WPIC 26.02, 26.01.

charged as "aggravated first degree murder". He argues from this: that "aggravated first degree murder" is the crime charged; that any statutory aggravating circumstance alleged is an element of that crime; that this element was not set out in the "to convict" instruction; and that when an instruction purports to set out all of the elements of a crime in a "to convict" instruction, it is reversible error to not include all of the elements therein (citing *State v. Emmanuel,* 42 Wn.2d 799, 819, 259 P.2d 845 (1953)).

▉ A statutory aggravating circumstance relates to the crime of premeditated murder in the first degree as a defendant being armed with a deadly weapon relates to the commission of certain felonies while so armed. In the statutory framework in which the statutory aggravating circumstances now exist, they are not elements of a crime but are "aggravation of penalty" provisions which provide for an increased penalty where the circumstances of the crime aggravate the gravity of the offense.[16] The crime for which the defendant was tried and convicted in connection with the death of his wife was premeditated murder in the first degree, and the jury was correctly instructed as to the elements of that offense. The penalty for that murder was properly enhanced to life imprisonment without possibility of parole when the jury unanimously found by a special verdict that the existence of a statutory aggravating circumstance had been proved by the State beyond a reasonable doubt. The trial court did not err in the respects claimed in instructing the jury.

Conceptually, the crime is premeditated murder in the first degree with aggravating circumstances. Commonly, however, the crime is often referred to by the courts and others as "aggravated first degree murder". This is understandable from a historical point of view because, as previously noted, at one stage in the development of the law in this regard, Initiative 316 did establish it as a separate RCW Title 9A crime; in fact, *State v. Green,* 91 Wn.2d 431,

---

[16]*See State v. Workman,* 90 Wn.2d 443, 453, 584 P.2d 382 (1978).

439, 588 P.2d 1370 (1979), in discussing the initiative, referred to it as "a distinct and separate crime". Since the present procedural statute, RCW 10.95.020, carries over the term "aggravated first degree murder" into RCW Title 10, the criminal procedure title, we perceive nothing inappropriate about continuing to refer to the crime as "aggravated first degree murder", "aggravated murder in the first degree" or simply as "aggravated murder". Nor is it our intention to hold herein that referring to this crime in instructions as the crime of "aggravated murder in the first degree", and including any alleged aggravating circumstance as an element of the offense, would be error. While the manner in which the trial court structured its instructions to the jury in this case may conceptually be the preferred manner, it is not the only way that a jury may be properly instructed on the matter.

Issue Two.

Conclusion. The reference to "murders" in statutory aggravating circumstance number 8 (RCW 10.95.020(8)) is a reference to either murder in the first degree or murder in the second degree. It follows that the second degree murder of the sister was a proper predicate on which the jury could find the existence of an aggravating circumstance.

The defendant argues that reference to "the murders" in statutory aggravating circumstance 8 should be read as referring only to premeditated first degree murders. That subsection of the statute reads:

> There was more than one victim and *the murders* were part of a common scheme or plan or the result of a single act of the person;

(Italics ours.) RCW 10.95.020(8).

■■ Where the language of a statute is clear, we will respect it.[17] The statute of which the above subsection is a part, RCW 10.95.020, specifies that the underlying crime must be premeditated first degree murder and refers to the

---

[17]*Griffin v. Department of Social & Health Servs.*, 91 Wn.2d 616, 624, 590 P.2d 816 (1979); *State v. Hentz*, 99 Wn.2d 538, 541, 663 P.2d 476 (1983).

precise statute defining that crime. But then in listing the aggravating circumstances which will enhance the penalty for the crime, it simply refers generally to "murders" in subsection 8 above. As observed at the outset of this opinion, the criminal code defines four kinds of homicide, one of which is murder, and then defines two degrees of murder. Since the context in which the words "the murders" are used in this subsection does not indicate otherwise, we perceive that the Legislature intended it to be a general reference to all murders defined by statute regardless of degree, namely to murder in the first degree and murder in the second degree, however those murders are committed. The trial court correctly instructed the jury in this regard.

The defendant's remaining assignments of error do not require extensive discussion.

The trial court also instructed the jury with reference to the above statutory aggravating circumstance as follows:

The term "common scheme or plan" means that there was a connection or nexus between the murders and the victims thereof. A scheme or plan is a design, method of action, or system formed to accomplish a purpose.

The term "act" is defined as the process of doing or performing something; an action or deed or something that is done or performed.

Instruction 28. The defendant assigns error to the first two sentences of this instruction.

The first sentence of this instruction is based on *State v. Grisby*, 97 Wn.2d 493, 501, 647 P.2d 6 (1982), *cert. denied sub nom. Frazier v. Washington*, 459 U.S. 1211, 75 L. Ed. 2d 446, 103 S. Ct. 1205 (1983), and is not improper. The second sentence is language proposed by the defendant and to which he did not except at trial. A party cannot request an instruction and later complain on appeal that the instruction should not have been given.[18] The third sentence defining "act" is a dictionary definition of the term which was approved in *State v. Forrester*, 21 Wn.

---

[18]*State v. Boyer*, 91 Wn.2d 342, 345, 588 P.2d 1151 (1979); *In re Griffith*, 102 Wn.2d 100, 102, 683 P.2d 194 (1984).

App. 855, 867–68, 587 P.2d 179 (1978). While better language than that now claimed to be erroneous could perhaps have been chosen, the instruction was not erroneous.

The defendant next, in effect, challenges the sufficiency of the evidence to establish that the murders were either part of a common scheme or plan or were the result of a single act by the defendant. The evidence was sufficient. Under the evidence, the jury could well have decided that the defendant intentionally killed his wife's sister (murder in the second degree), so as to get at his wife in order to carry out his planned purpose, namely the premeditated murder of his wife (murder in the first degree). As such, both murders were part of a common scheme or plan and were also the result of a single act as those terms were defined to the jury in this case.[19]

The defendant claims that since only the "single act" alternative of RCW 10.95.020(8), set out above, was pleaded in the information, the trial court should not have instructed on the "common scheme or plan" alternative. The record shows that both alternatives were fully discussed in pretrial and trial proceedings, and the common scheme or plan alternative was the subject of proposed defense instructions; error was not committed in this regard.[20]

The sentences imposed on the defendant for the two murders are to run concurrently, hence no constitutional double jeopardy or multiple punishment issue arises.[21]

Contrary to the allegations in the defendant's supplemental pro se brief, nothing in the appellate record suggests that he was not competent to stand trial and to assist in his own defense.

---

[19]*See Grisby*, at 500–01; *State v. Rupe*, 101 Wn.2d 664, 693–94, 683 P.2d 571 (1984); *State v. Dictado*, 102 Wn.2d 277, 285, 687 P.2d 172 (1984).

[20]*Boyer*, at 345; *Griffith*, at 102.

[21]*State v. Johnson*, 96 Wn.2d 926, 932, 639 P.2d 1332 (1982).

Affirmed.

WILLIAMS, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., concur.

Reconsideration denied March 4, 1985.