[No. 29420-2-I.    Division One.    March 9, 1992.]

THE STATE OF WASHINGTON, *Petitioner*, v. JOHNNY OTIS BROWN, *Respondent*.

*Norm Maleng, Prosecuting Attorney,* and *Mark R. Larson* and *Robert Knief, Deputies,* for petitioner.

*Lori Gustavson, Patricia Schrein,* and *Jeff Ellis* of *Washington Appellate Defender Association,* for respondent.

AGID, J. — The State of Washington seeks review of a pretrial ruling dismissing aggravating circumstances of "common scheme or plan" and "single act" from the first degree murder charges filed against Johnny Otis Brown. We hold that the procedure adopted in *State v. Knapstad,* 107 Wn.2d 346, 729 P.2d 48 (1986) may not be used as a basis for dismissing aggravating circumstances alleged under RCW 10.95.020, and reverse.

By amended information, the State charged Brown with two counts of noncapital aggravated murder in the first degree. RCW 9A.32.030(1)(a) and 10.95.020(8). Count 1 alleges that Brown killed Norma Johnson and that, as aggravating circumstances, the murder was part of a common scheme or plan or the result of a single act. RCW 10.95.020(8). Count 2 alleges that Brown killed Maria Moreno and that, as aggravating circumstances, the murder was part of a common scheme or plan or the result of a single act, or was committed in the course of or in flight from a burglary. RCW 10.95.020(8), (9)(c). Johnson and Moreno, who had both had relationships with Brown and who lived in different units in the same duplex, were shot within a few minutes of each other on January 31, 1991.

Prior to the beginning of trial, defense counsel filed a motion pursuant to *State v. Knapstad, supra,* to dismiss the

aggravating factors of common scheme or plan and single act with respect to both counts. The trial court granted the. motion to dismiss and denied the State's motion for reconsideration. As a result, count 1 (Johnson) would proceed as premeditated first degree murder. Count 2 (Moreno) would proceed as premeditated first degree murder with one aggravating circumstance, murder in commission of or flight from a burglary. The State then filed a motion for discretionary review. By order entered November 21, 1991, this court granted the State's motion and stayed the trial pending review.

I

FACTS

The parties relied here and in the trial court on the factual summary set forth below for purposes of the *Knapstad* motion. The summary is derived largely from the State's bill of particulars and from Brown's statement to police after the shootings.

Brown and Norma Johnson had a relationship for a number of years. In 1988, Brown moved into Johnson's duplex in Federal Way. Brown later quit his job with Metro, a decision that generated friction between Brown and Johnson. Brown physically abused Johnson on several occasions, and his conduct was the basis for several criminal charges. At some point, Johnson obtained a no-contact order against Brown.

After Brown moved out of Johnson's home, he became romantically involved with Maria Moreno, who lived in the duplex unit adjoining Johnson's. As a result of Brown's affair with Moreno, the relationship between Johnson and Moreno deteriorated. In late 1990, Johnson was convicted of assaulting Moreno. Johnson also instituted a civil suit to recover property that Brown had moved from Johnson's unit to Moreno's unit. At about this time, Brown reconciled with Johnson and moved back into her home. Moreno also obtained a restraining order against Brown. In the months before the killings, Brown made several threats against both Johnson and Moreno.

During the early evening of January 31, 1991, Brown and Johnson began arguing in the kitchen about a radio that Johnson was playing loudly. Brown smashed the radio, and Johnson asked her son to call 911. Johnson told Brown that just because Moreno had stolen his radio, he did not have the right to break her radio.

In his statement, Brown said he then stepped to a nearby bookcase[1] and grabbed a gun, "[o]ut of frustration. I couldn't think straight. I didn't want to have to deal with the cops or nothin'. I just fired the gun." Johnson was shot in the head at close range. By the time Johnson's children came down to the kitchen, Brown had already left the house.

Brown went next door to Moreno's unit, knocked on the door, forced his way into the hallway, and confronted Moreno.[2] Brown struggled with Moreno, dragging her outside. Several witnesses observed Brown shoot Moreno three times. In his statement, Brown said that after shooting Johnson, he wanted to "see this lady that . . . has . . . caused me so much pain and anger." Brown indicated that his anger toward Moreno had been building up for some time, both because of Moreno's refusal to return certain items of property and because of "the rumors she was spreading she was turning the whole neighborhood against us." Brown maintained, however, that he went over to Moreno's just to talk with her. After shooting Moreno, Brown returned to Johnson's house and left in Johnson's car.

Johnson died at the scene. Moreno died later in a hospital. Brown made a number of statements to various people during the 2 days before his arrest. He told another girl friend that he shot the two women because "I just had enough of them. I just had enough."

---

[1] The parties disagree as to whether the gun was in a nearby bookcase or in the garage.

[2] The parties dispute whether Brown demanded property back from Moreno before he shot her. The defense relies on a statement to this effect in the certification for determination of probable cause. The State's position is that its inclusion in the certification was an error and that there is no testimony to support it.

■ The State first contends that the trial court erred in dismissing the aggravating circumstances because it failed to follow the procedures outlined in *Knapstad*, 107 Wn.2d at 356-57. The State bases this argument on contentions that Brown's motion to dismiss was not supported by an affidavit setting forth undisputed facts, that the trial court did not enter a written order of dismissal, and that there are numerous material disputed facts. None of these arguments was presented to the trial court, and we decline to address them now.[3]

The State also contends that the trial court lacks inherent authority to dismiss only aggravating circumstances, *i.e.*, only a portion of the State's charge, because such a procedure does not promote judicial economy or fairness. Finally, the State argues that, because the court rules do not clearly permit the State to obtain immediate review when a motion dismissing aggravating circumstances is granted, RAP 2.2(b)(1) must be interpreted to grant it an interlocutory appeal as a matter of right.

■ We hold that the procedure approved in *Knapstad* may not be applied to dismiss aggravating circumstance allegations under RCW 10.95.020 prior to trial. Because jeopardy attaches at the time the jury is sworn, applying the *Knapstad* procedure to pretrial dismissal of only the aggravating circumstances while proceeding to trial on the remainder of the State's allegations furthers neither of the purposes upon which *Knapstad* was premised: promoting fairness and judicial efficiency.[4] 107 Wn.2d at 349.

---

[3]We do note, however, that the factual disputes that arose during oral argument in this court concerning the facts on which the trial court based its order of dismissal could have been avoided if the parties had followed the *Knapstad* procedures.

[4]While we base our decision on considerations of fairness and judicial efficiency, it does not necessarily follow that the trial court lacks inherent authority to dismiss under these circumstances. We therefore expressly reserve the question of the trial court's inherent authority to dismiss aggravating circumstance allegations. As we read the majority opinion in *Knapstad*, our Supreme Court has determined that, at least where there are no factual disputes and it is clear beyond a reasonable doubt that the State cannot prove the elements of the

## II
## THE *KNAPSTAD* PROCEDURE

A brief review of *State v. Knapstad, supra,* is necessary to an understanding of our decision. In *Knapstad,* the defendant was charged with possession of a controlled substance with intent to manufacture or deliver based on evidence seized in a residence in which he did not live. The sole evidence linking the defendant to the residence was a gasoline credit card receipt dated several months prior to the search, a traffic ticket issued to the defendant 2 weeks prior to the search, evidence that the defendant's car had been seen at the residence on three occasions, and evidence that the defendant's brother was a resident of the house. *Knapstad,* 107 Wn.2d at 348. The trial court dismissed the charge prior to trial, determining that the State's evidence was insufficient as a matter of law to establish that the defendant actually or constructively possessed the controlled substance found in the residence. Both this court and the Supreme Court affirmed.

As the foregoing summary indicates, the circumstances in *Knapstad* differ in three critical respects from those present here. First, the *Knapstad* procedure rests on the assumption that the entire charge is the subject of the motion to dismiss. Thus, where the *Knapstad* motion is granted, it is granted without prejudice, and the State may either refile the case or appeal the decision because jeopardy has not yet attached. 107 Wn.2d at 357. Second, unlike this case, the evidence before the court in *Knapstad* was relatively simple. All of the material facts were clearly undisputed and could be summarized in two or three sentences.[5] Third, the State

crime charged, the trial court has inherent authority to dismiss the entire case. 107 Wn.2d at 351-53. Given our resolution of the issue here, we need not decide if that inherent authority extends to pretrial dismissal of less than all of the State's allegations.

[5] As the Court of Appeals observed in its opinion, *State v. Knapstad,* 41 Wn. App. 781, 788, 706 P.2d 238 (1985), *aff'd,* 107 Wn.2d 346, 729 P.2d 48 (1986), the State presented its entire case in chief during the pretrial motion. The trial court therefore also knew exactly what the actual testimony would be prior to ruling on the motion.

conceded that a conviction was unwarranted under the facts, yet insisted that it had the right to proceed with a trial. *Knapstad*, 107 Wn.2d at 351.

The *Knapstad* decision rests on the premise that the trial court has inherent authority to dismiss a prosecution prior to trial "if the State's pleadings including any bill of particulars, are insufficient to raise a jury issue on all elements of the charge." *Knapstad*, 107 Wn.2d at 352. The court observed that "when the material facts of a prosecution are not in dispute, the case is in the posture of an isolated and determinative issue of law as to whether the facts establish a prima facie case of guilt." 107 Wn.2d at 352-53.

After setting out procedures the trial court must follow to "serve the purpose of avoiding a trial when all the material facts are not genuinely in issue and could not legally support a judgment of guilt[,]" the Supreme Court held that, following dismissal of the charge,

> [t]he court has the discretion to order the defendant held in custody or admitted to bail for a reasonable, specified time pending the filing of a new indictment or information. If no new information is filed the defendant would be discharged.
> A defendant has no right to appeal a denial of the motion to dismiss. RAP 2.2(a). *The State has a right of appeal.* RAP 2.2(b). *A dismissal and discharge under this procedure is not a bar to a subsequent prosecution for the same offense based on additional evidence.*

(Italics ours.) *Knapstad*, 107 Wn.2d at 356-57.

The *Knapstad* procedure is intended to promote "[f]airness and judicial efficiency" when it is clear beyond doubt that the State cannot prove the elements of the crime. 107 Wn.2d at 349. However, when only the "aggravation of penalty" factors are dismissed from a charge of premeditated murder, the court cannot further both of these goals. We will examine each goal in turn.

A. Fairness to the Parties.

■ Under *Knapstad*, the entire charge is dismissed without prejudice. Because jeopardy[6] has not yet attached,

[6]U.S. Const. amend. 5 ("nor shall any person be subject for the same offense to be twice put in jeopardy"). This provision is enforceable against the states

*Crist v. Bretz*, 437 U.S. 28, 38, 57 L. Ed. 2d 24, 98 S. Ct. 2156 (1978) (jeopardy attaches when the jury is sworn), the State's right to appeal or to refile the charge is preserved. *See, e.g., Serfass v. United States*, 420 U.S. 377, 392, 43 L. Ed. 2d 265, 95 S. Ct. 1055 (1975); *State v. Chiles*, 53 Wn. App. 452, 455, 767 P.2d 597 (1989); 3 W. LaFave & J. Israel, *Criminal Procedure* § 24.3, at 82 (1984). Under such circumstances, the defendant is not forced to endure — and the State is not put to the expense of — a useless trial. Yet, the State is also not foreclosed from challenging the dismissal or from refiling the same charge based on new or additional evidence. *Knapstad*, 107 Wn.2d at 357.

By contrast, under the procedure followed here, jeopardy will attach at the time the jury is sworn. Once jeopardy attaches and the jury returns a verdict on the charges and the aggravating factor remaining to be tried in this case, the State will be forever foreclosed from appealing the partial dismissal or retrying Brown on the additional aggravating factor.[7] *Arizona v. Rumsey*, 467 U.S. 203, 211-12, 81 L. Ed. 2d 164, 104 S. Ct. 2305 (1984).

> [W]hether the trial is to a jury or to the bench, subjecting the defendant to postacquittal factfinding proceedings going to guilt or innocence violates the Double Jeopardy Clause. *Arizona v. Rumsey*, 467 U. S. 203, 211-212 (1984).
>
> When a successful postacquittal appeal by the prosecution would lead to proceedings that violate the Double Jeopardy Clause, the appeal itself has no proper purpose. Allowing such an appeal would frustrate the interest of the accused in having an end to the proceedings against him. The Superior Court was correct, therefore, in holding that the Double Jeopardy Clause bars a postacquittal appeal by the prosecution not only when it might result in a second trial, but also if reversal would translate into " 'further' proceedings of some sort, devoted to the

---

through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 23 L. Ed. 2d 707, 89 S. Ct. 2056 (1969). Article 1, section 9 of the Washington State Constitution provides the same guaranty: "No person shall . . . be twice put in jeopardy for the same offense."

[7]The fact that an aggravating circumstance is not an "element" of the murder charge, *State v. Kincaid*, 103 Wn.2d 304, 312, 692 P.2d 823 (1985), is not relevant to the double jeopardy implications of pretrial dismissal of less than all of the State's allegations.

resolution of factual issues going to the elements of the offense charged.' " [*United States v. Martin Linen Supply Co.*, 430 U.S. 564, 570, 51 L. Ed. 2d 642, 97 S. Ct. 1349 (1977)].

(Footnotes omitted.) *Smalis v. Pennsylvania*, 476 U.S. 140, 145-46, 90 L. Ed. 2d 116, 106 S. Ct. 1745 (1986); *cf. State v. Culp*, 30 Wn. App. 879, 639 P.2d 766 (1982) (once jeopardy attaches, prosecution on lesser included offense precludes subsequent prosecution on greater offense).

■ In evaluating the purposes underlying the *Knapstad* dismissal procedure and its double jeopardy implications, the court must balance the purpose of the double jeopardy clause with the interest of society in assuring that the State is afforded a fair opportunity to present its case against a criminal defendant. *See United States v. Scott*, 437 U.S. 82, 57 L. Ed. 2d 65, 98 S. Ct. 2187 (1978). The double jeopardy provisions of the federal and state constitutions were designed

> to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. . . . The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States*, 355 U.S. 184, 187-88, 2 L. Ed. 2d 199, 78 S. Ct. 221, 61 A.L.R.2d 1119 (1957). A criminal defendant is therefore protected from a second prosecution for the same offense after acquittal or after a conviction for a lesser included offense and, under more limited circumstances, when a trial is terminated on the merits without either a conviction or an acquittal.[8] *See North Carolina v. Pearce*, 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072

---

[8]Even if the trial court dismisses charges prior to the jury's verdict, there can be no appeal or retrial without running afoul of the double jeopardy clause where the trial court "evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572, 51 L. Ed. 2d 642, 97 S. Ct. 1349 (1977).

(1969), *overruled on other grounds in Alabama v. Smith*, 490 U.S. 794, 104 L. Ed. 2d 865, 109 S. Ct. 2201 (1989).

A defendant's right to be free from the hazards of more than one trial for an offense, however, is not absolute. *See Scott*, 437 U.S. at 92-95. Application of double jeopardy principles does not occur in a vacuum or according to a mechanical test. *Illinois v. Somerville*, 410 U.S. 458, 467-68, 35 L. Ed. 2d 425, 93 S. Ct. 1066 (1973). Courts are also required to consider the countervailing societal interest in the fair and orderly administration of justice and balance that interest with double jeopardy concerns. *See, e.g., Burks v. United States*, 437 U.S. 1, 15, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1978) (retrial for trial error, as opposed to evidentiary insufficiency, furthers both the accused's strong interest in obtaining fair readjudication of his guilt free from error and society's "valid concern for insuring that the guilty are punished"); *Wade v. Hunter*, 336 U.S. 684, 689, 93 L. Ed. 974, 69 S. Ct. 834 (1949). Among the interests that the courts must consider is society's "valued right to 'one complete opportunity to convict those who have violated its laws.' " *Scott*, 437 U.S. at 100 (quoting *Arizona v. Washington*, 434 U.S. 497, 509, 54 L. Ed. 2d 717, 98 S. Ct. 824 (1978)).

Dismissal of aggravating circumstance allegations prior to trial frustrates any attempt to balance these competing goals. It does not relieve the defendant of the burden of undergoing a trial on the underlying charge of premeditated murder, especially here, where one count of aggravated murder remains to be tried. But the dismissal will generally bar the State from ever trying the defendant on the aggravating factors. On the other hand, there still remains a risk that the State may seek to retry the defendant if it later discovers additional evidence supporting the dismissed aggravating factor which could "not [have] been discovered [before trial] despite the exercise of due diligence.' " *Illinois v. Vitale*, 447 U.S. 410, 420 n.8, 65 L. Ed. 2d 228, 100 S. Ct. 2260 (1980) (quoting *Brown v. Ohio*, 432 U.S. 161, 169 n.7, 53 L. Ed. 2d 187, 97 S. Ct. 2221 (1977)). Should such addi-

tional facts be discovered during trial when the court hears the actual testimony of witnesses, as opposed to the attorneys' versions of what that testimony will be, a mistrial and a second trial could be required if it were then too late to amend the information to reallege the dismissed aggravating factor. *State v. Pelkey*, 109 Wn.2d 484, 745 P.2d 854 (1987) (midtrial amendment of charge prohibited except to charge a lesser included offense or a lesser degree of the same offense).

■ In order to preclude both the possibility of subjecting the defendant to two trials and prejudice to the State, the trial court should await the actual testimony of the State's witnesses and reserve a decision on whether the State has, in fact, adduced sufficient proof to send the aggravating circumstance to the jury. At that point, the State will have had its one full and fair opportunity to convince the trier of fact and, because jeopardy will have attached with respect to all of the State's charges, the defendant will not have to bear the risk of a second trial.[9]

B. Judicial Efficiency.

The State suggests that we may solve the double jeopardy dilemma created by the procedure followed in this case by interpreting RAP 2.2(b)(1)[10] to allow an appeal before trial of

---

[9]Defense counsel informed the court at oral argument that the reason they sought dismissal before trial rather than making a motion at the close of the State's case was a "tactical decision" to avoid prejudice to Brown that would result from the jury's hearing that he was charged with two counts rather than one count of aggravated first degree murder. While we understand and appreciate defense counsel's concerns, we do not believe that these considerations are the same as those upon which the Supreme Court relied in *Knapstad*. There, the defendant was faced with having to endure a full trial where the State conceded it could not prove the elements of the offense. Here, even if Brown prevails on this motion, he will still be tried on two counts of murder, one of which remains aggravated pursuant to RCW 10.95.020(9)(c). In our view, requiring the defendant to go through a useless criminal trial on patently unsupportable allegations is significantly more burdensome and unfair than requiring him to face a second aggravating circumstance allegation where the first will unquestionably be before the jury.

[10]RAP 2.2(b)(1) provides:

"Except as provided in section (c), the State or a local government may appeal in a criminal case only from the following superior court decisions and only if the appeal will not place the defendant in double jeopardy:

a trial court decision dismissing an aggravating factor. While this may be a reasonable interpretation of RAP 2.2(b)(1), a pretrial appeal most assuredly does not enhance "judicial efficiency", the second goal upon which the *Knapstad* decision rested. 107 Wn.2d at 349.

■ Interlocutory appeals are the antithesis of judicial efficiency and economy. *See Fox v. Sunmaster Prods., Inc.,* 115 Wn.2d 498, 503-04, 798 P.2d 808 (1990); *Maybury v. Seattle*, 53 Wn.2d 716, 720-21, 336 P.2d 878 (1959). In this case, the parties, their attorneys and witnesses have waited since October 29, 1991, for a ruling on this issue. Only because this court has overset the oral argument calendar and expedited the opinion in this case has it taken less than 6 months to obtain a decision. This unusual procedure forces other parties whose appeals are ready for argument to wait longer for a resolution of their issues. The defendant in this case has been in custody since early February 1991 awaiting trial on these charges. Given the serious nature of the charges and the potential sentence if Brown is convicted, another appeal at the end of the case is also likely. The delay occasioned by an interlocutory appeal prejudices both the defendant and the State, and two appeals in one case unnecessarily tax the already overloaded court docket. Applying the *Knapstad* procedure to the partial dismissal of aggravating circumstance allegations simply cannot be seen as furthering judicial economy.

### III
#### AGREEMENT ON THE FACTS

Finally, despite the sincere efforts of counsel in this case to agree to the facts, there emerged at least two factual disputes during the course of oral argument in this court. The State asserts that there will be no testimony from its witnesses that a verbal confrontation about Brown's property intervened between the two shootings. This testimony,

---

"(1) *Final Decision, Except Not Guilty.* A decision which in effect abates, discontinues, or determines the case other than by a judgment or verdict of not guilty, including but not limited to a decision setting aside, quashing, or dismissing an indictment or information."

which arguably supplies a different motive for shooting Moreno, is pivotal to the defense contention that the two murders were not part of a common scheme or plan or a single act, as the State alleges. There is conflicting testimony concerning whether Brown had to go to the garage to get a gun or was able, in a moment of rage, to grab one from a nearby bookcase. The resolution of this conflict may also be important to the trial court's view of Brown's mental state and intentions at the time he shot Johnson. No one yet knows what the actual testimony will be. *See Rosenberg v. Commonwealth*, 372 Mass. 59, 63, 360 N.E.2d 333, 336 (1977) (pretrial dismissal for insufficiency of State's evidence where State fails or refuses to stipulate that appellate record contains all of its contemplated evidence would, in some cases, "deny to the prosecution its privilege to establish evidence of guilt by compelling testimony at the trial from witnesses who were not cooperative prior to trial"), *quoted in Knapstad*, 107 Wn.2d at 354.

In order to dismiss the common scheme or plan or single act aggravating circumstance allegation at the close of the State's case, the trial court must be convinced that, viewing the evidence in the light most favorable to the State, no rational juror could find beyond a reasonable doubt that the murders occurred as part of a common scheme or plan or a single act. *See State v. Caliguri*, 99 Wn.2d 501, 505, 664 P.2d 466 (1983); *State v. Bishop*, 90 Wn.2d 185, 190, 580 P.2d 259 (1978). The judge will be fully informed and in a much better position to make this decision at the end of the State's case than is possible before the witnesses have testified. As we noted earlier, this was in fact what happened in *State v. Knapstad*, 41 Wn. App. 781, 788, 706 P.2d 238 (1985), *aff'd*, 107 Wn.2d 346, 729 P.2d 48 (1986).

Here, the court dismissed the common scheme or plan aggravating factor because it determined there was no evidence that both killings were committed for the "same reason". On appeal, Brown also maintains that, in order to

establish the common scheme or plan aggravating factor, the State must adduce evidence that the defendant contemplated two or more murders prior to execution of the plan. However, because we have determined that the *Knapstad* procedure is not available when the defense seeks dismissal of an aggravating factor prior to trial, we do not reach the merits of the trial court's resolution of the motion.

We do note that, at this stage of the proceedings, the facts in this case appear to be similar to those in *State v. Kincaid*, 103 Wn.2d 304, 692 P.2d 823 (1985), in which a unanimous Supreme Court held that both the "common scheme or plan" and "single act" prongs of RCW 10.95.020(8) were met even though only one of the two murders was premeditated. By definition, the jury could not have found that the second degree murder was planned in advance of the killings. Its common scheme or plan finding was nevertheless affirmed.

In view of the parties' arguments in this court, perhaps more significant is the *Kincaid* court's approval of the following jury instruction on this statutory aggravating factor:

> The term "common scheme or plan" means that there was a connection or nexus between the murders and the victims thereof. A scheme or plan is a design, method of action, or system formed to accomplish a purpose.

103 Wn.2d at 314. This instruction apparently requires neither a preconceived plan to commit multiple murders nor that the defendant necessarily have the same reason for killing both victims. Clearly, Kincaid killed his sister-in-law to get past her to his wife, the real object of his homicidal anger. It does not appear from the facts of that case either that Kincaid had the same reason for killing both victims or that he planned to kill his sister-in-law until the moment he saw her screaming on the steps he had to climb to reach his wife.

This being said, should the defense renew its motion to dismiss the "common scheme or plan or single act" aggravating factor allegations at the close of the State's case, we

leave it to the trial court to make this determination in light of the evidence actually adduced by the State in its case in chief.

Reversed and remanded.

GROSSE, C.J., and BAKER, J., concur.

Review denied at 119 Wn.2d 1009 (1992).