[No. 27809-6-I.   Division One.   July 27, 1992.]

*In the Matter of the Dependency of* M.A.

THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent,* v. MICHAEL AKRISH, SR., *Appellant.*

*Virginia L. Marshall* of *Society of Counsel Representing Accused Persons* and *Mary Jane Ferguson* of *Washington Appellate Defender Association,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Mary Ann Comiskey, Assistant,* for respondent.

*Lori L. Irwin,* as guardian ad litem.

AGID, J. — Michael Akrish appeals a dependency review order removing his son, M.A., from the family home. He contends that none of the statutory conditions for removal provided in RCW 13.34.130(1)(b) was present and that the State failed to provide the court with a dispositional plan as required under RCW 13.34.130(3). We conclude that the dependency review order is not appealable as a matter of right and deny discretionary review pursuant to RAP 2.3.

## I
### FACTS

On June 2, 1988, the parties entered into an agreed order of dependency, declaring M.A. dependent under RCW 13.34-.030(2), and ordering that he should remain with his parents.[1] The trial court made the following findings of fact:

> [M.A.] is at risk of injury from inadequate supervision, due to 1) Mrs. Akrish's suspected developmental disability and 2) Mr. Akrish's psychological deficiencies which include multiple anxiet[ies] and agoraphobia, and problems with impulse control. The risk to [M.A.] is minimized by supportive services already in place, but the parties agree to court supervision to provide structure for monitoring this program as he becomes more independent.

The disposition ordered that M.A. continue to attend the Childhaven Therapeutic Day Care program (Childhaven); Ms. Akrish continue to participate in parent counseling at

---

[1]The Division of Children and Family Services had earlier filed a dependency petition for the two children of Shirley and Michael Akrish, A.A. and M.A., alleging abuse and neglect of the children. Although a shelter care order was entered authorizing placement of both children, only A.A. was removed from the home. A guardianship was later established for A.A., and this appeal concerns only the dependency of M.A.

Childhaven and cooperate with efforts to establish her eligibility for specialized services provided by the DSHS Division of Developmental Disabilities (DDD); Mr. Akrish participate in intensive outpatient mental health counseling at the Seattle Mental Health Institute (SMHI); both parents complete parent training classes and seek out advice from their counselors regarding child safety; and both parents undergo psychological testing. The Division of Children and Family Services (DCFS) was ordered to arrange for testing to determine Ms. Akrish's eligibility for DDD services and, upon establishing eligibility, to assist her in obtaining independent living counseling and training through DDD contractors.

Between August 25, 1988, and November 28, 1990, seven dependency review orders were entered, each continuing M.A.'s residence with his parents. While the orders noted compliance by Ms. Akrish with counseling and participation in the Childhaven program, the June 21, 1990, and November 28, 1990, orders noted that Mr. Akrish was not participating in any of the court-ordered services. Attached to the November 28, 1990, dependency review order was a new dispositional plan. The plan essentially continued the requirements listed in the original plan, but added that both parents were to continue in therapy with David Slagle of SMHI and that a homemaker should be provided for in-home teaching and consultation on M.A.'s behavior.[2]

On December 14, 1990, DCFS sought a pick-up order for M.A. on the basis of three prior incidents in which M.A. was left unsupervised and ran into the street. Rather than issuing the order, the court set an emergency fact-finding hearing for the following Monday. On December 17, 1990, an emergency dependency review hearing was held. Ms. Akrish was present, but Mr. Akrish did not attend the hearing.

---

[2]However, according to testimony at the December 17, 1990, emergency dependency review hearing, a homemaker had begun working with the family in the summer of 1990.

David Slagle testified that the focus of Ms. Akrish's treatment was on issues of child safety and discipline.[3] He had particular concerns about M.A.'s safety, in light of three recent incidents in which M.A. ran out into the street. In each incident, M.A. was in Ms. Akrish's care when he ran off, and she was unaware either that he was gone or was in the street. Mr. Slagle testified that Ms. Akrish's ability to judge the potential danger of certain situations was impaired. Although Ms. Akrish's ability to set limits for M.A. within the home had improved, her ability to restrain him outside the home had not. He expressed hope that Mr. Akrish's condition would improve with specialized treatment and, despite his concerns for M.A.'s safety, recommended that M.A. be permitted to remain in the home on the basis that M.A. would suffer severe emotional trauma if separated from his mother.

Judith Scarborough, a homemaker provided by the Department of Family Support Services, also expressed concerns about Ms. Akrish's ability to control M.A., especially outside the home. She testified that when she confronted Ms. Akrish about one of the incidents in which she let M.A. run off, Ms. Akrish told Ms. Scarborough that she could not run after M.A. because she had to finish her appointment. Ms. Scarborough also stated that M.A. would sometimes get away from Ms. Akrish even when he was wearing a harness because Ms. Akrish would forget to hold on to the leash.

Emma Post, director of Childhaven's main branch, testified that M.A. had been in the program since he was 6 months old and that Ms. Akrish had also participated faithfully in the program. Although the Childhaven staff was very fond of Ms. Akrish and believed she loved M.A. dearly, they recommended that M.A. be removed from his home

---

[3]Mr. Slagle had also counseled Mr. Akrish, but he primarily worked with Ms. Akrish.

because of the incidents in which M.A. had run out into the street. Ms. Post testified that the parents had not trained M.A. to follow instructions, that Ms. Akrish's ability to control M.A. was getting worse, and that the Childhaven staff members were "very afraid that [M.A.] may not survive."

Ms. Akrish testified that she used the harness on M.A. at times, but did not think she needed to use it all the time on outings. She stated that she would use it on every outing with M.A. if the court ordered her to do so.

The trial court ruled that there were no alternatives less restrictive than removing M.A. from the home. The court determined that, although Ms. Akrish had diligently participated in court-ordered services, M.A. was in serious danger of being physically injured if he remained in his home. Weighing the risk of physical harm against the likelihood that M.A. would suffer severe separation anxiety if removed from his mother's care, the court concluded that the risk of physical harm outweighed the emotional trauma M.A. would experience upon separation from his parents. M.A. was ordered into the custody of DCFS, and Mr. Akrish's appeal followed.

II

DISCUSSION

Appeal by Right Under RAP 2.2(a)(5)

We must first determine whether the trial court's disposition decision following a dependency review hearing in which the court orders the child removed from the home for the first time is appealable as a matter of right under RAP 2.2(a)(5). RAP 2.2 enumerates the types of orders that are appealable as a matter of right. The rule provides in pertinent part:

> (a) **Generally.** Unless otherwise prohibited by statute or court rule and except as provided in sections (b) and (c), a party may appeal from only the following superior court decisions:
>
> . . . .
> (5) Juvenile Court Disposition. The disposition decision following a finding of dependency by a juvenile court, or a dispo-

sition decision following a finding of guilt in a juvenile offense proceeding.

    (6) Deprivation of All Parental Rights. A decision depriving a person of all parental rights with respect to a child.

RAP 2.2(a)(5), (6).

The appellant argues that the trial court's decision to remove M.A. from the home was such a profound change in the status quo that it amounts to a new disposition and therefore warrants review under RAP 2.2(a)(5). In *In re Chubb*, 112 Wn.2d 719, 721, 773 P.2d 851 (1989), a mother of two children found dependent under RCW 13.34.030(2)(c) sought to appeal the decisions made in three dependency review hearings.[4] The mother also appealed the later termination of her parental rights, and the appeals were consolidated. The Court of Appeals ruled that, because dependency review orders are interlocutory in nature, the appellant was not entitled to review of those orders as a matter of right. *In re Chubb*, 52 Wn. App. 541, 543-44, 762 P.2d 352 (1988).

On discretionary review, the Supreme Court analyzed whether Ms. Chubb was entitled to review of the dependency review orders under RAP 2.2(a)(5). It reiterated the rule that the court's failure to list a particular proceeding in RAP 2.2(a) indicates its intent that the matter be reviewable only on discretionary review under RAP 2.3. Relying on the plain language of RCW 13.34.130(1), which governs the procedure for issuing an "order of disposition" in a dependency proceeding, the court found that the only disposition appealable as a matter of right is the disposition that results from a finding of dependency at the original fact-finding hearing. The court further concluded that, in confining appealable dependency dispositions to those made "following a finding of dependency", the drafters of RAP 2.2(a)(5) clearly meant to exclude dependency *review* orders. *Chubb*, 112 Wn.2d at 721-22.

---

[4]The children had been removed from the home as part of the original disposition. Ms. Chubb had already appealed that order, and the Court of Appeals had affirmed the disposition. *In re Chubb*, 46 Wn. App. 530, 731 P.2d 537 (1987).

The court gave two additional reasons for its conclusion. First, because former RCW 13.34.130(3)[5] provides for a periodic review of the juvenile court disposition, the court determined that the statute "serves as a built-in review process for the original disposition." 112 Wn.2d at 722. Additionally, the court affirmed the Court of Appeals' conclusion that dependency review orders are interlocutory in character and therefore not appealable as a matter of right:

> [D]ependency review orders are not final: former RCW 13.34-.130(3) mandates that review hearings occur every 6 months after the original disposition. This review process continues until either the status quo changes and the court decides that its supervision should not continue or until a petition for termination is made. Because they take place in an ongoing process, the review hearings and the orders issued from them are interlocutory: they are not final, but await possible revision in the next hearing.[6]

*Chubb*, 112 Wn.2d at 724.

■ The appellant argues that, despite its holding, *Chubb* does not foreclose appeals from dependency review orders when the order imposes a substantial change in the status quo. He relies on language in *Chubb*, which states that, an "appeal by right applies only to the disposition decision following the finding of dependency *or to a marked change in the status quo, which in effect amounts to a new disposition*." (Italics ours.) 112 Wn.2d at 725. However, the language relied on by appellant is dicta and is immediately preceded by the court's discussion concluding that dependency review orders are interlocutory in character. Placing the language

---

[5]Former RCW 13.34.130(3) is now codified in subsection (5). RCW 13.34-.130(5) reads in part: "[T]he status of all children found to be dependent shall be reviewed by the court at least every six months from the beginning date of the placement episode or the date dependency is established, whichever is first, at a hearing in which it shall be determined whether court supervision should continue."

[6]The *Chubb* court held that the plain language of RAP 2.2(a) and RCW 13.34-.130, indicating that appeal by right applies only to dispositions following the initial fact-finding hearing at which a finding of dependency is made, was dispositive. It therefore did not need to rely on the interlocutory nature of the order to determine that there was no appeal of right in that case. *Chubb*, 112 Wn.2d at 724-25.

in the context of the entire *Chubb* opinion, we do not believe the court meant to allow an appeal by right for every dependency order in which the child's custody has been changed. If that were the case, the State would also be entitled to appeal every order returning a child to the parents' custody, thus proliferating the number of appeals and putting the appellate courts in the position of unduly interfering with the trial court's orderly disposition of the case. The 6-month periodic review hearings mandated by RCW 13.34.130(5) and the availability of discretionary review provide sufficient safeguards to satisfy due process concerns.

■ As the *Chubb* court determined, appeals from dependency review hearings are interlocutory in nature. In the absence of a showing of obvious or probable error pursuant to RAP 2.3, such appeals are discouraged because they frustrate the goals of judicial economy and efficiency. *See State v. Brown*, 64 Wn. App. 606, 617, 825 P.2d 350 (1992). These goals are of paramount concern and preclude the review of orders implicating even constitutional rights when probable or obvious error has not been demonstrated.[7]

That the status of the dependency may have changed during these subsequent review hearings further illustrates the difficulty in reviewing the trial court's interlocutory orders. In this case, at least two mandatory review hearings have been held since M.A. was removed from his parents' custody. Because proceedings held after a notice of appeal has been filed are not part of the record before us, we have no way of knowing how the status of the case and the parties has changed and whether the claimed errors on appeal have been remedied. While the case proceeds through the trial court, our record and knowledge of what has happened are frozen at the time the appeal was filed.

---

[7] We recognize that the nature of the deprivation to the parent when his or her child is removed from the home is severe. *In re C.R.B.*, 62 Wn. App. 608, 615, 814 P.2d 1197 (1991) (a parent's right to the care and custody of his or her child is a fundamental liberty interest). However, in other areas involving equally important liberty interests, such as a trial court's denial of bail pending trial or appeal, we have for the same reasons precluded appeals by right. *See* RAP 2.2.

Finally, the parents are entitled to an appeal by right of an order terminating their parental rights. RAP 2.2(a)(6). Here, a termination petition was filed after the father filed this appeal. Assuming the parents' rights are terminated, all of the issues presently before this court on appeal will be before us on review of the termination order. Thus, our holding does not preclude review of these issues. Review is denied.

The remainder of this opinion has no precedential value. Therefore, it will not be published, but has been filed for public record. *See* RCW 2.06.040; CAR 14.

COLEMAN and BAKER, JJ., concur.