[Nos. 48537-7-I; 48538-5-I; Division One. April 15, 2002.]
48539-3-I.

*In the Matter of the Interest of* J.W., ET AL.

MARCIA BRYANT, *Appellant*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*.

*Colby Haase* and *Eric Broman* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant.

*Christine O. Gregoire, Attorney General*, and *Elizabeth C. Castilleja, Assistant*, for respondent.

PER CURIAM — In these consolidated appeals, Marcia Bryant challenges an order appointing dependency guardians for three of her children. She contends several of the court's findings are not supported by the evidence. The State contends the appeal should be dismissed, arguing that the order is not appealable and does not warrant discretionary review. We hold that the order is appealable as a matter of right. We conclude, however, that the challenged findings are supported by substantial evidence. Accordingly, we affirm.

## FACTS

Marcia Bryant is the mother of seven children. This appeal involves her seven-year-old twins, J.W. and J.W., and four-year-old A.B.

With the exception of the twins, all of Bryant's children have different fathers. Several of these men verbally and/or physically abused Bryant and the children. The twins' father was addicted to crack cocaine. He beat and raped Bryant on a weekly basis, sometimes in front of the children. A.B.'s father had problems with alcohol and was mentally and verbally abusive to Bryant and her oldest child, S.

In 1992, Bryant self-reported to Child Protective Services (CPS) that she "spanked" S. and gave him a swollen eye. As a result of that contact, Bryant participated in a parenting class and a Homebuilders program. She and S. also received counseling related to incidents involving S. sexually acting out.

In August 1998, five of Bryant's children, including the twins and A.B., resided with her. Bryant worked at night and left 10-year-old S. in charge of the children. In September 1998, police investigating 911 hang-up calls found Bryant's children alone in the house. There were dog feces and urine on the floor. Bryant admitted to an investigating officer that she had hit S. The children were placed in protective custody.

In January 1999, the parties entered an agreed order of dependency for all five children. In addition to the facts surrounding the children's placement in protective custody, the order recited that Bryant had reported a history of mental illness, had been hospitalized following suicide attempts, and was opposed to taking her prescribed medications. The order stated that there had been "10 CPS referrals" and that the family had been offered extensive services.

As of May 1999, Bryant had received family preservation services, drug and alcohol treatment, individual counseling,

parenting classes, anger management, home support services, psychiatric and psychological evaluations, and visitation with her children.

In March 2000, following a permanency planning hearing, the court found that Bryant's counseling and substance abuse treatment had not been effective. Six months later, the court found that while Bryant had complied with a number of court ordered services, she had not complied with court ordered mental health counseling.

The Department of Social and Health Services filed dependency guardian petitions on behalf of the twins and A.B, and trial commenced in February 2001. Evidence presented at trial established that Bryant continued to have unsuccessful and unhealthy relationships with men after the children were removed from her home. One of these relationships resulted in pregnancy. Four months later, Bryant met another man and became engaged to him. In August 2000, she moved with her fiancé to Georgia, cutting off personal contact with her children until shortly before trial. The relationship ended in October 2000.

On her way to Georgia, Bryant dropped her daughter K. off with K.'s father in Ohio. Bryant did this despite the fact that the father had been abusive to Bryant and her children, had sexually abused S., and had gang raped Bryant with four other men.

Dr. Richard Borton testified that he conducted two evaluations of Bryant in April 1999 and March 2000. He diagnosed her as having a personality disorder with antisocial and borderline characteristics. People with such disorders typically refuse to acknowledge their problems and resist getting treatment. At the time of the 1999 evaluation, Dr. Borton "wasn't sure" whether Bryant would be able to benefit from services. After the 2000 evaluation, however, he thought significant improvement was unlikely. He noted that Bryant had stopped going to counseling for four months and had failed to show up for roughly half of her scheduled visitations. She showed no concern over these missed appointments or their affect on the children. In

addition, the results of her most recent psychological tests were basically identical to earlier results, indicating little if any improvement in her personality disorder. Dr. Borton did see improvement in several areas. But ultimately, he felt that the missed visitation and counseling portended poorly for Bryant's prospects and that the time frame for significant improvement was "so long that it . . . overwhelms the children's best interest."

The children's Court Appointed Special Advocate, Joan Holliday, testified that Bryant typically did not call to cancel the visits she missed. When Bryant missed visits, Holliday sometimes received calls from teachers reporting that the children were acting out. In the visits Holliday observed, Bryant "was very indifferent to the children, little eye contact, very little touching." She felt Bryant "had not internalized any of the service information" and was not capable of caring for the children's financial, social, and emotional needs.

Carl Finch, a caseworker with the Department of Child and Family Services, described the various services Bryant received. They included one-on-one counseling for life issues, as well as in-home counseling for family and parenting issues. He testified that all services recommended in Bryant's psychological evaluations were offered or provided. The service providers consistently reported that Bryant was unable to apply what she had learned to her life and failed to "put the children's needs or safety first." Finch felt there was little likelihood that conditions could be remedied so that the children could be returned to Bryant in the near future.

The trial court found the statutory prerequisites for a dependency guardianship had been proven. In its findings, the court emphasized that Bryant's behavior before and during the dependency supported Dr. Borton's conclusion that continued services were not likely to produce a significant change in the foreseeable future. The court found that a guardianship, rather than a termination of parental rights, was in the children's best interest.

## DECISION

### I

The Department contends Bryant's appeal must be dismissed because the order is not appealable and does not warrant discretionary review. We conclude the order is appealable as a matter of right.

■ RAP 2.2 lists the decisions from which an appeal may be taken as a matter of right. The rule allows appeals from a "disposition decision following a finding of dependency"[1] and a decision terminating parental rights[2] but does not mention decisions creating dependency guardianships. Normally, the failure "to mention a particular proceeding in RAP 2.2(a) indicates [the Supreme Court's] intent that the matter be reviewable solely under the discretionary review guidelines of RAP 2.3."[3] The Supreme Court has held, however, that RAP 2.2(a)(5) allows an appeal not only from the disposition following the initial finding of dependency, but also from any subsequent disposition that effects a "marked change in the status quo [and] amounts to a new disposition."[4] While most orders entered in the course of a dependency will not meet this standard,[5] conversion of a dependency to a dependency guardianship is plainly a "marked change" in the status quo that, in effect, amounts to a new disposition. The order creating dependency guardianships is therefore appealable as of right.

### II

To establish a dependency guardianship, a court must find that the statutory allegations in RCW 13.34.231 have

---

[1] RAP 2.2(a)(5).

[2] RAP 2.2(a)(6).

[3] *In re Chubb*, 112 Wn.2d 719, 721, 773 P.2d 851 (1989).

[4] *In re Chubb*, 112 Wn.2d at 725.

[5] *See In re Dependency of M.A.*, 66 Wn. App. 614, 620-22, 834 P.2d 627 (1992).

been proven by a preponderance of the evidence.[6] The trial court made the requisite findings in this case. Bryant contends two of those findings are not supported by substantial evidence.[7] We disagree.

Bryant first challenges the court's finding that "all necessary services reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided."[8] She contends she should have received more intense counseling. In support, she points to Dr. Borton's testimony that at the time of his initial evaluation, he thought "the counseling that Ms. Bryant was engaged in needed to be more intensified somehow."

But Dr. Borton also testified that when he evaluated Bryant a year later, she had not seen her counselor for four months and had missed half of her scheduled visits. Bryant had not called to cancel many of the appointments, and Dr. Borton felt "that her missing counseling was not important to her, and her going to counseling was not important to her." He felt the likelihood of success in therapy was "very low" and there was little reason to believe that Bryant's attitude and behavior toward available services would change. When asked how much counseling would be neces-

---

[6] RCW 13.34.231 provides that a court must find the following by a preponderance of the evidence:

"(1) The child has been found to be a dependent child under RCW 13.34.030;

"(2) A dispositional order has been entered pursuant to RCW 13.34.130;

"(3) The child has been removed . . . from the custody of the parent for a period of at least six months pursuant to a finding of dependency under RCW 13.34.030;

"(4) The services ordered under RCW 13.34.130 and 13.34.136 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided;

"(5) There is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; and

"(6) A guardianship, rather than termination of the parent-child relationship or continuation of efforts to return the child to the custody of the parent, would be in the best interest of the child."

[7] *In re Welfare of Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973) (findings of fact will not be disturbed if supported by substantial evidence); *In re Dependency of T.R.*, 108 Wn. App. 149, 29 P.3d 1275 (2001).

[8] Finding of Fact I.

sary for Bryant to make marked improvement, Dr. Borton said it could take "years."

■ It is well settled that additional services that might have been helpful need not be offered when a parent is unwilling or unable to make use of the services provided.[9] We recently applied this rule in *In re Dependency of T.R.*[10] There, the mother argued that the services provided were insufficient because they lacked the long-term continuity she needed to master parenting skills. Although several witnesses testified that the mother would have benefited from a longer period of more consistent services, we cited the rule that additional services need not be provided where a parent is unwilling to make use of the services provided. We noted that the mother had received extensive services, but despite this, "her attendance was intermittent and her progress minimal."[11] The same is true here. The challenged finding is supported by substantial evidence.[12]

■ Bryant also challenges the court's finding that there is "little likelihood that conditions will be remedied so that the children can be returned to the parents in the near future."[13] She contends the evidence supporting this finding is ultimately undermined by Dr. Borton's testimony that Bryant should have received more intense counseling. This contention ignores Dr. Borton's conclusions that Bryant was unlikely to succeed in therapy given her attitude toward counseling services, and that services would not improve Bryant's situation in the foreseeable future. The challenged finding is supported by the evidence.

Affirmed.

---

[9] *In re Dependency of T.R.*, 108 Wn. App. 149, 163, 29 P.3d 1275 (2001); *In re Dependency of P.D.*, 58 Wn. App. 18, 792 P.2d 159 (1990); *In re Dependency of Ramquist*, 52 Wn. App. 854, 861, 765 P.2d 30 (1988).

[10] *Dependency of T.R.*, 108 Wn. App. at 163-64.

[11] *Dependency of T.R.*, 108 Wn. App. at 164.

[12] A case cited by Bryant—*In re Dependency of H.W.*, 92 Wn. App. 420, 961 P.2d 963, 969 P.2d 1082 (1998)—is distinguishable for the reasons set forth in our decision in *Dependency of T.R.*, 108 Wn. App. at 163-64.

[13] Finding of Fact J.