2016 SEP -6 AM 8:49


# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| IN RE DEPENDENCY OF A.D. | ) | No. 74227-2-I |
| | ) | |
| PATRICIA DIMITRY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | UNPUBLISHED OPINION |
| DEPARTMENT OF SOCIAL AND | ) | |
| HEALTH SERVICES, | ) | |
| | ) | |
| Respondent. | ) | FILED: September 6, 2016 |

SPEARMAN, J. — Patricia Dimitry claims that she is the "de facto" parent of A.D. and therefore has a right to participate in the child's dependency proceeding. Her motion to intervene in the case to assert the purported right was denied and she appeals. At issue is whether the order denying her motion is appealable under Washington's rules of appellate procedure. We conclude that it is not. We further conclude that even if the order was appealable, the trial court did not err when it denied Dimitry's motion to intervene. Accordingly, we dismiss her appeal.

## FACTS

Appellant Patricia Dimitry was the purported custodian of A.D. and J.J., two young children ages 3 and 7 at the time they were placed in dependency. In March 2014, Dimitry and the children were residing at a local shelter in Seattle.

Child Protective Services received a report that expressed concerns about Dimitry's parenting, criminal history, and care of the children. The children were placed in protective custody. The next day Dimitry met with a social worker and reported that she had adopted the children at birth and that their mother, Laura Jenkins, had relinquished all parental rights to her. Dimitry provided a consent judgment from a Louisiana court that acknowledged Jenkins' agreement to give Dimitry custody of J.J. Dimitry also provided a notarized statement signed by Jenkins as evidence of her intent to give Dimitry custody of A.D. as well.

Respondent State of Washington, Department of Social and Health Services (DSHS) filed a petition for dependency for A.D., listing Dimitry as the mother on March 17, 2014. Both Jenkins and Dimitry testified at a shelter hearing where the court ordered that both children remain in licensed care.

DSHS filed an amended petition for A.D. on April 15, 2014, naming Jenkins as the mother and removing Dimitry as a party. On that same day, Dimitry moved to dismiss the dependencies and have the children returned to her. On April 24, the juvenile court commissioner entered an order requiring both children to remain in licensed care pending trial, and setting additional shelter care hearings with regard to Dimitry and Jenkins.

On May 8, 2014, the juvenile court entered agreed orders of dependency for both children – with regard to Jenkins as the biological mother for A.D. and with regard to Dimitry as the purported custodian for J.J. Both orders listed a return to Dimitry as an option for the children's permanent plans. Dimitry did not

2

object to the orders of dependency or the amended petition removing her as a party to A.D.'s dependency.

On August 6, 2014, Dimitry again moved for the children to be returned to her care. The juvenile court denied her motion and ordered that the children remain in DSHS's custody. Dimitry filed a status report with the court on January 7, 2015, asking that she be found in compliance with the dependency orders and that the children be placed with her. Jenkins also filed a report with the court indicating that she advocated for placement of the children with Dimitry. On January 15, 2015, the juvenile court denied the request, finding that it was not properly before the court.

On June 2, 2015, Dimitry filed another report requesting that she be found in compliance and that the children be returned to her. DSHS moved to strike the filings. On June 10, 2015, the juvenile court entered an order in A.D.'s dependency, stating that Dimitry's "status in this case is debated," because while she had been removed as a party, the State did not appeal the orders stating that Dimitry was still being considered as an option for permanent placement. Clerk's Papers (CP) at 633 (quoting Commissioner's Order (6/11/15) at 10-11.

DSHS moved to revise the commissioner's ruling to remove the "legal uncertainty" of Dimitry's status, arguing that she had no legal interest in the child, the petition had been amended to remove her as a party to the dependency, and she had never challenged the orders, moved to intervene, or otherwise established that she has legal standing as a party. CP at 632. Following a hearing on the motion, the trial court revised the commissioner's order, finding

3

that Dimity had not established that she was a custodian of A.D. or otherwise entitled to status as a party to the dependency. The court further ordered that if Dimitry seeks to be added as a party, she must note a motion to intervene and file it by August 3, 2015.

Dimitry moved to intervene on July 21, 2015. The commissioner granted Dimitry's motion under CR 24(b)(2). The commissioner found that because Dimitry met the criteria for a de facto parent under In re Parentage of L.B., 155 Wn.2d 679, 708, 122 P.3d 161 (2005), she "share[d] a factual and legal interest in the full panoply of issues before the court in [A.D.'s] dependency."[1] CP at 1001. Relying on In re Dependency of D.M., 136 Wn. App. 387, 149 P.3d 433 (2006), the commissioner also found that it could properly consider Dimitry's motion for status as a de facto parent in the context of A.D.'s dependency. The commissioner rejected DSHS's argument that de facto parentage could only be established by petition in a separate action.

DSHS moved to revise the commissioner's decision. In granted DSHS's motion, the trial court found that Dimitry's motion to intervene as untimely and that in any event, she had shown no basis for intervention under CR 24(a) or (b).

---

[1] The L.B. court held:

> To establish standing as a de facto parent we adopt the following criteria ... :
> (1) the natural or legal parent consented to and fostered the parent-like relationship, (2) the petitioner and the child lived together in the same household, (3) the petitioner assumed obligations of parenthood without expectation of financial compensation, and (4) the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship, parental in nature.... In addition, recognition of a de facto parent is "limited to those adults who have fully and completely undertaken a permanent, unequivocal, committed, and responsible parental role in the child's life. C.E.W., 845 A.2d at 1152

No. 74227-2-I/5

The court reversed the commissioner's finding that Dimitry was A.D.'s de facto parent and concluded that "the establishment of de facto parentage cannot be made via a motion in a juvenile dependency proceeding." CP at 1202. Dimitry appeals.[2] DSHS contends the appeal should be dismissed because the order is not appealable under RAP 2.2(a).

<u>DISCUSSION</u>

RAP 2.2(a) delineates the types of superior court decisions that may be appealed. Dimitry appears to argue that the order denying her motion to intervene is like those described in subsections (a)(3) and (a)(5).[3] Subsection (a)(3) allows an appeal for "[a]ny written decision affecting a substantial right in a civil case that in effect determines the action and prevents a final judgment or discontinues the action." Subsection (a)(5) permits the appeal of '[t]he disposition decision following a finding of dependency by a juvenile court ...." In determining whether an order is appealable under these rules, it is the practical effect of the order that controls. <u>In re Dependency of A.G.</u>, 127 Wn. App. 801, 808, 112 P.3d. 588 (2005) (citing <u>Munden v. Hazelrigg</u>, 105 Wn.2d 39, 44-45, 711 P.2d 295 (2012)).

Dimitry contends that she has the right to participate in A.D.'s dependency proceeding because she claims to be the child's de facto parent. Thus, she

_____

[2] Dmitry does not assert that the matter is appropriate for discretionary review under RAP 2.3(b)(2).

[3] Dimitry also appears to suggest that as a de facto parent she falls within the definition of a "parent" or "custodian" as set out in RCW 13.04.011(5) and (6), respectively, and therefore has a statutory right to participate in A.D.'s dependency. Br. of Appellant at 5. We note that Dimitry cites no authority in support of this position, but, in any event, we need not resolve the question because, as noted herein, she has not established that she is a de facto parent to A.D.

5

argues the order denying her motion to intervene is appealable under subsection (a)(3) because it denied her right to participate in that proceeding and discontinued the action as to her. DSHS argues that Dimitry has no right to participate in the dependency. It points to the trial court's unchallenged order on the first motion for revision, which found that Dimitry had not established de facto parentage, was not a party to A.D.'s dependency and therefore had no standing to participate in that case. In response, Dimitry relies on the commissioner's ruling on her motion to intervene, which she claims established her to be A.D.'s de facto parent. We agree with DSHS, because once revised, a commissioner's order is a nullity. See In re Marriage of Dodd, 120 Wn. App. 638, 644, 86 P.3d 801 (2004). Thus, Dimitry's reliance on that ruling is misplaced.

On revision of a commissioner's decision, the superior court reviews the findings of fact and conclusions of law de novo. In re Marriage of Moody, 137 Wn.2d 979, 993, 976 P.2d 1240 (1999). If the superior court simply denies the motion to revise the commissioner's findings or conclusions, the court, in effect, adopts the commissioner's findings, conclusions, and rulings as its own. Grieco v. Wilson, 144 Wn. App. 865, 877, 184 P.3d 668 (2008). But when the court makes independent findings and conclusions, the court's revision order then supersedes the commissioner's decision. Id.

In Grieco, the court commissioner found that the grandparent petitioners had established adequate cause for a nonparental custody action "'based on the fact that the children are in the physical custody of the grandparents and have been for a few years and it would be detrimental to remove them from the

6

grandparents' care.'" 144 Wn. App. at 870. The father moved for revision and the superior court denied the motion, but declined to find detriment, reasoning that it only needed to find "'that the children are not in the custody of parents to find adequate cause.'" Id. at 871. On appeal, the order was reversed because it was an error of law to conclude the fact that the children were not in the father's custody was sufficient for adequate cause. Id. at 876.

The Grieco grandparents argued that regardless of the trial court's error, they had established adequate cause based on the commissioner's findings of actual detriment. 144 Wn. App. at 877. These findings, however, were superseded by the judge's entry of "a separate and distinctly different order" that stated that the denial of the motion to revise was based on the court's interpretation of the statute, not the commissioner's findings. Id.

Likewise, here, the trial court's revision order rendered the commissioner's determination of de facto parentage a nullity. Thus, Dimitry cannot rely on that ruling to establish her right to participate in A.D.'s dependency. Because Dimitry cannot show she has a right to participate in the dependency, neither can she show that the order denying intervention is appealable under RAP 2.2(a)(3).

Relying on In re Interest of J.W., 111 Wn. App. 180, 43 P.3d 1273 (2002), Dimitry also argues that the order denying her motion to intervene is appealable under RAP 2.2(a)(5). The rule provides in pertinent part, the "disposition decision following a finding of dependency by a juvenile court . . ." is an appealable order. In J.W., the mother entered into an agreed order of dependency as to five of her children. DSHS subsequently filed petitions for

dependency guardianships as to three of the children. After a trial, the court granted the petitions and the mother appealed.

On appeal, DSHS contended that the mother's appeal should be dismissed because the order establishing the dependency guardianship was not appealable. It argued that RAP 2.2 explicitly allow appeals of an order following a finding of dependency and an order terminating parental rights[4] and because the order at issue was neither, it was not appealable. We noted however, that in In re Dependency of Chubb, 112 Wn.2d 719, 773 P.2d 851 (1989), the Court held "that RAP 2.2(a)(5) allows an appeal not only from the disposition following the initial finding of dependency, but also from any subsequent disposition that effects a 'marked change in the status quo [and] amounts to a new disposition.'" J.W., 111 Wn. App. at 185 (quoting Chubb, 112 Wn.2d at 725). We held that because the order converting the dependency to dependency guardianship was a marked change in the status quo that amounted to a new disposition, it was appealable.

Dimitry attempts to analogize her case in J.W. but the effort is unavailing because again she relies on the commissioner's ruling finding her to be A.D.'s de facto parent. She contends the commissioner's order established the status quo and that the order denying her motion to intervene effected a marked change in that status. Dimitry is mistaken. The status quo at the time of the motion to intervene was that Dimitry was not a party to A.D.'s dependency. And since the

---

[4] See RAP 2.2(a)(5) and (6), respectively.

commissioner's ruling was revised, it had no effect on that status. Thus, the trial court's denial of the motion to intervene preserved the status quo, it did not change it. The order is not appealable under subsection (a)(5).

Finally, Dimitry argues that the denial of her motion to intervene is appealable because the order denies her ability to establish de facto parentage in the context of A.D.'s dependency proceeding. But the only authority she cites does not support the argument. In L.B., the court held that under the common law, a person may have standing to prove that he or she is a de facto parent. Id. at 707. But the court does not address the proposition Dimitry urges here, that one has a right to establish de facto parentage in the context of an ongoing dependency proceeding.

Nor does In re Dependency of D.M., 136 Wn. App. 387, 149 P.3d 433 (2006), support Dimitry's contention. In that case, an aunt and her partner (hereinafter, custodians) were legal custodians of two children by virtue of a third party custody order entered in superior court. When DSHS commenced a dependency action as to the two children, the petition named the custodians as parties, as well as the children's biological mother. During the dependency, the third-party custody order was vacated. Sometime later, a hearing was held regarding termination of biological mother's parental rights. The trial court did not allow the custodians to participate in the hearing. The custodians did not argue to the trial court that as de facto parents, they were entitled to participate in the termination proceeding.

9

On appeal, we declined to address whether the exclusion was proper, concluding that the custodian would not have been allowed to participate in any event because they "fail[ed] to meet even the first L.B. threshold criterion to establish de facto parent status." Id. at 397.

We reject Dimitry's argument that she has a right to participate in A.D.'s dependency to establish de facto parent status because she cites no relevant authority in support of it. But even if it was appealable, we would affirm the denial based on the trial court's finding of untimeliness.

Intervention in a dependency action by anyone other than the child's natural parent will "rarely be appropriate." In re Welfare of Coverdell, 39 Wn. App. 887, 891, 696 P.2d 1241 (1984). Any such decision permitting intervention is within the court's informed discretion and will be reviewed under an abuse of discretion standard. In re Dependency of J. H., 117 Wn.2d 460, 471-72, 815 P.2d 1380 (1991). An appellate court will review a trial court's evaluation of timeliness in particular only for abuse of discretion. Olver v. Fowler, 161 Wn.2d 655, 665, 168 P.3d 348 (2007).

Dimitry argues that her motion to intervene was timely, because it was filed before the commencement of trial. Br. of Appellant at 17, citing American Discount Corp., Inc. v. Saratoga West, Inc., 81 Wn.2d 34, 499 P.2d 869 (1972)). She contends that intervention may be allowed at any stage in the proceeding. Id. But as the trial court noted, Dimitry did not file her motion to intervene until more than a year after she was removed as a party from A.D.'s dependency. It observed that Dimitry "waited far too long to intervene, when she had full notice

of these proceedings." CP at 1202. Dimitry offered no reason then or now as to why her motion to intervene was not filed earlier in the proceedings. Nor has she shown that the trial court's finding of untimeliness is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons.

Because the order on revision denying Dimitry's motion to intervene is not appealable, we dismiss her appeal.

Dismissed.

Spearman, J.

WE CONCUR:

Trickey, ACJ

Schindler, J